UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                          :

UNITED STATES OF AMERICA,                :        01-CR-537 (ARR)

    -against-                                       :        <u>NOT FOR ELECTRONIC</u>
                                               :        <u>OR PRINT PUBLICATION</u>

MANUEL SANTOS,                           :
                                               :        **OPINION & ORDER**
                        *Defendant*.             :
                                               :
------------------------------------------------------------------------ X

ROSS, United States District Judge:

Defendant, Manuel Santos, has filed a motion for a sentence reduction, also known as a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes. For the reasons set forth below, I deny Mr. Santos's motion.

## BACKGROUND

Mr. Santos filed a previous motion to reduce his sentence on January 12, 2021. Def.'s Mot. for Sentence Reduction ("Def.'s Jan. Mot."), ECF No. 176. I denied that motion on February 8, 2021, on the grounds that Mr. Santos had failed to exhaust his administrative rights, and even if he had exhausted them, he had not presented extraordinary and compelling reasons warranting his release. Op. & Order 1, 5–9, ECF No. 179.

Mr. Santos's relevant criminal and conviction history is detailed further in that order. In short, Mr. Santos was hired to murder two men as part of a drug sale dispute. Mr. Santos and associates surveilled their intended victims' purported residence. When two individuals emerged, Mr. Santos shot and killed both victims, one of whom was a fourteen-year-old boy. It turned out the two victims had not been the men Mr. Santos had been hired to kill. *Id.* at 1–2. The year before

Mr. Santos was tried and convicted for these acts, he was convicted of manslaughter in a separate shooting. Gov't's Opp'n 2−3, ECF Nos. 183 (sealed), 184 (public). Mr. Santos also has two weapons convictions, one of which involved shooting a firearm at another person. *Id.* at 2.

Mr. Santos is now in his twenty-first year[1] of concurrent life sentences—arising out of the murders for hire described above—and 120 months' consecutive imprisonment for using a firearm during the murders, *see id.* at 3; J. 1, ECF No. 67. Sometime between the filing of his prior motion for compassionate release and February 25, 2021, *see* Mail Returned Notice, ECF No. 180, Mr. Santos moved from USP Coleman II, a maximum-security facility, to FCI Otisville, a medium-security facility, *FCI Otisville*, Fed. Bureau Prisons, https://www.bop.gov/locations/institutions/otv/ (last visited Nov. 9, 2021), where he is currently incarcerated, *see* Def.'s Mot. for Sentence Reduction 3 ("Def.'s Mot."), ECF No. 182.

On September 21, 2021, Mr. Santos filed the instant motion to reduce his sentence. Def.'s Mot. Mr. Santos argues that he is not barred from relief because of his life sentence, *id.* at 22−26, and that extraordinary and compelling reasons warrant his release on several grounds. Regarding the COVID-19 pandemic, Mr. Santos argues that pandemic safety measures have made his sentence "much more punitive than intended," and that his medical conditions, including obesity and diabetes, render him "especially" vulnerable to COVID-19. *Id.* at 7–19. Mr. Santos also highlights his rehabilitation and "exemplary record" during his twenty years of incarceration, including a lack of disciplinary citations since 2013. *Id.* at 2–4, 22. Finally, he argues that his sentence is overly harsh, and he has already served a sentence consistent with the average current sentence for federal murder cases. *Id.* at 20–21.

---

[1] According to Mr. Santos, with good time credit, he has served 24 years total. Def.'s Mot. for Sentence Reduction 1−2 ("Def.'s Mot."), ECF No. 182.

2

On October 7, 2021, the government filed its response. Gov't's Opp'n. First, the government argues that Mr. Santos's age, his medical conditions, and the length and conditions of his incarceration do not constitute extraordinary and compelling reasons for his release under 18 U.S.C. § 3582(C)(1)(A)(i). *Id.* at 7–10. Second, the government argues that the nature of Mr. Santos's offenses, combined with his criminal and disciplinary history, weigh against release in light of the 18 U.S.C. § 3553(a) sentencing factors. *Id.* at 10–11.

Mr. Santos's reply, if any, was due October 14, 2021. To date, the court has not received a reply. Thus, I consider Mr. Santos's motion to be fully briefed.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting a defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (citation and quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to

support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id*. at 237–38 (quoting 28 U.S.C. § 994(t) (emphasis added)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) does not bind a district court, *id.* at 237 n.5, but it does provide some guidance, *United States v. Dekattu*, No. 18-CR-474 (ARR), 2020 WL 7711842, at *1 (E.D.N.Y. Dec. 29, 2020). Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios: first, where "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."); second, where a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id.* cmt. 1(A)(ii). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

    (1) the nature and circumstances of the offense and the history and characteristics
        of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law,

    and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
  (5) any pertinent [Sentencing Commission] policy statement . . . .
  (6) the need to avoid unwarranted sentence disparities among [d]efendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *United States v. Hatcher*, No. 18-CR-454(10) (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting U.S.S.G. § 1B1.13(2)). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]," 18 U.S.C. § 3142(g)(1)–(4).

The parties do not dispute that Mr. Santos has exhausted his administrative remedies. Mr. Santos submitted his request to the warden of FCI Otisville on June 22, 2021. Def.'s Mot., Ex. A, ECF No. 182-1. The warden failed to respond within thirty days. *See* Def.'s Mot., Exs. A & B, ECF No. 182-1. On August 5, 2020, Mr. Santos received notice that the Bureau of Prisons ("BOP") denied his request. Def.'s Mot., Ex. B. Therefore, I need only address whether Mr. Santos has stated extraordinary and compelling reasons for release, and whether those reasons are outweighed by the § 3553(a) factors.

## DISCUSSION

**I. Mr. Santos Has Not Demonstrated That Extraordinary and Compelling Reasons Weigh in Favor of His Release.**

Mr. Santos avers that he suffers from two health conditions that make him particularly vulnerable to COVID-19: diabetes and obesity. Def.'s Mot. 4. While Mr. Santos's diabetes diagnosis

5

is evident from his submitted medical records, *see id.*, Ex. C, ECF No. 182-1, Mr. Santos's alleged obesity is not. Mr. Santos states that his body mass index ("BMI") is 30. Def.'s Mot. 3. However, if Mr. Santos is 5'6" tall and weighs 154 pounds—as he submits in his motion, *see id.* at 4 & Ex. D, ECF No. 182-1—then his BMI is approximately 24.9, within the "healthy" weight range. *See* Gov't's Opp'n 7; *see also Adult BMI Calculator*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Oct. 21, 2021). I therefore find that Mr. Santos has not proffered sufficient evidence that he suffers from obesity. By contrast, Mr. Santos's diabetes diagnosis does plausibly make him more vulnerable to COVID-19. The Centers for Disease Control and Prevention ("CDC") has stated that "[h]aving either type 1 or type 2 diabetes can make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 14, 2021).

But without additional comorbidities or evidence that Mr. Santos is currently experiencing severe health issues due to his diabetes, his health condition does not amount to extraordinary and compelling reasons for release. Diabetes has routinely been found insufficient for release where there is no evidence that it is not and/or could not be well-managed. *See, e.g.*, *United States v. Cedeno-Martinez*, No. 17-CR-6107 (FPG), 2021 WL 1206518, at *2 (W.D.N.Y. Mar. 31, 2021) (noting that the defendant's diabetes seemed to be under control and he did not require the use of insulin); *United States v. Stevens*, 459 F. Supp. 3d 478, 484 (W.D.N.Y. May 12, 2020) (noting that the defendant's diabetes was not "a serious condition, impairment, or age-related deterioration that substantially diminishe[d] his ability to provide self-care," nor was there any "indication that [defendant] suffer[ed] from diabetes to the degree that he [wa]s experiencing a serious deterioration in his physical or mental health due to the aging process."). Mr. Santos similarly has not provided any evidence that his diabetes

is not well-managed or that FCI Otisville does not have the capacity to manage it going forward. *Compare United States v. Jones*, No. 17-CR-214 (CM), 2021 WL 4120622, at *3 (S.D.N.Y. Sept. 9, 2021) (noting that "diabetes is among one of the more common maladies among prison inmates in the BOP, and the BOP is well equipped to help [the defendant] control his diabetes," and that the defendant was receiving regular medical checkups and the prescriptions he needed) *with United States v. Franco*, No. 12-CR-932 (PAC), 2020 WL 4344834, at *2 (S.D.N.Y. June 24, 2020) (finding extraordinary and compelling circumstances where the defendant, who had severe diabetes, hypertension, and obesity, had been classified as "a Care Level Three inmate defined as [a] 'fragile outpatient[] who require[s] frequent clinical contacts, and/or who may require some assistance with activities of daily living' because his diabetes 'was out of control.'" (citation omitted)).

Courts in this circuit have found extraordinary and compelling reasons to exist for inmates suffering from diabetes *combined* with other severe conditions. *See, e.g.*, *United States v. Fernandez*, No. 12-CR-844-9 (AJN), 2020 WL 7647459, at *3 (S.D.N.Y. Oct. 14, 2020) (diabetes and hypertension); *Franco*, 2020 WL 4344834, at *2–3 (severe diabetes, hypertension, and obesity); *United States v. Molina Acevedo*, No. 18-CR-365 (LGS), 2020 WL 3182770, at *2–3 (S.D.N.Y. June 15, 2020) (diabetes, hypertension, and coronary heart disease); *United States v. Rivernider*, No. 10-CR-222, 2020 WL 2393959, at *1 (D. Conn. May 12, 2020) (diabetes, heart disease, and hypertension); *United States v. Daugerdas*, No. 9-CR-581 (WHP), 2020 WL 2097653 (S.D.N.Y. May 1, 2020) (diabetes, obesity, hypertension, and high cholesterol); *United States v. Bess*, 455 F. Supp. 3d 53, 64–65 (W.D.N.Y. 2020) (congestive heart failure, coronary artery disease, severely depressed ventricular function, diabetes, and hypertension); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335–36 (S.D.N.Y. 2020) (diabetes, hypertension, and obesity); *United States v. Colvin*, 451 F. Supp. 3d 237, 240–41 (D. Conn. 2020) (diabetes and high blood pressure). For several of the

above defendants, their combined conditions manifested in emergent health issues. *See, e.g.*, *Franco*, 2020 WL 4344834, at *2 (defendant had "experienced symptoms of severely unmanaged diabetes, including a significant decline in his eyesight and the loss of seven teeth"); *Molina Acevedo*, 2020 WL 3182770, at *3 (defendant had "undergone bypass surgery, an amputation of several toes, and ha[d] lost vision and teeth"); *Bess*, 455 F. Supp. 3d 53, 64. (defendant had undergone an open-heart triple-bypass surgery and had a cardiac defibrillator in his chest).

Mr. Santos has not identified any such health condition beyond his diabetes. As discussed above, there is no evidence he is obese. Nor is Mr. Santos's age—sixty-one, Def.'s Mot. 2—a decisive comorbidity counseling in favor of release. To be sure, the CDC has stated that the "[o]lder adults are more likely to get very sick from COVID-19." *COVID-19 Risks and Vaccine Information for Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Aug. 2, 2021). "The risk increases for people in their 50s and increases in 60s, 70s, and 80s." *Id.* Accordingly, at sixty-one years old, Mr. Santos is at higher risk for severe illness than younger people. The greatest risk for severe illness from COVID-19, however, is among those aged 85 or older, *id.*, and 8 out of 10 COVID-19 deaths reported in the United States in the summer of 2020 were adults 65 years old and older, *COVID-19 Recommendations for Older Adults*, CDC, https://www.cdc.gov/aging/covid19-guidance.html (last updated Aug. 4, 2021). Thus, Mr. Santos's age does not place him in the category of greatest risk. *See, e.g.*, *United States v. Peña*, No. 9-CR-341 (VM), 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020) (denying compassionate release to defendant whose "age—fifty-eight years old—[did] not put [him] in the greatest risk age category" (citation and quotation marks omitted)). In combination, Mr. Santos's age and diabetes do not mandate release. *Cf. United States v. Donato*, Nos. 3-CR-929, 5-CR-60 (NGG), 2020 WL 3642854, at *1–2 (E.D.N.Y. July 6, 2020) (denying

8

compassionate release to a sixty-two-year-old defendant suffering from, *inter alia*, hyperlipidemia, premature atrial contractions, a history of pneumonia and continuing upper respiratory ailments, a lipid disorder, and high cholesterol); *United States v. Weingarten*, No. 8-CR-571 (BMC), 2020 WL 2733965, at *2 (E.D.N.Y. May 26, 2020) (denying compassionate release to a seventy-year-old defendant suffering from "kidney, bladder, and urinary conditions, as well as from an unspecified prostate disorder, pericarditis, and 'heart problems'").

There are also several indicators that Mr. Santos is not particularly vulnerable to COVID-19. He recently contracted the virus while incarcerated, and it appears that he was asymptomatic or suffered mild symptoms. Def.'s Mot., Ex. C, MS-MED-029–30 (noting that Mr. Santos "completed the isolation requirement for asymptomatic/mild symptomatic COVID-19 + *[sic]* patients"); *see also* Def.'s Jan. Mot. 2 (acknowledging that he did "not develop[] any symptoms of a life-threatening nature"). Mr. Santos is also now vaccinated against COVID-19. Def.'s Mot. 15. While the surge in breakthrough infections and the emergence of the Delta variant, *see What You Need to Know About Variants,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (last updated Nov. 1, 2021) mean vaccination is not as decisive a factor as previously believed, *see, e.g.*, *United States v. Salemo*, No. 11-CR-65 (JSR), 2021 WL 4060354, at *6 (S.D.N.Y. Sept. 7, 2021) (highlighting "the remaining danger that COVID-19 poses, even to those who have recovered from COVID-19 and who have been fully vaccinated"), it still does not counsel in favor of release given the particular circumstances here. Finally, while Mr. Santos raises the possibility of "Long Covid," he does not argue that he has any symptoms associated with that condition. *See* Def.'s Mot. 17.

Mr. Santos also argues that the presence of COVID-19 combined with unsafe prison conditions at his BOP facility, FCI Otisville, leave him unable to protect himself against infection and render his incarceration more punitive than originally intended. *Id.* at 10–11, 14–17. While

9

carceral settings carry an inherent risk of rapid infection spread,[2] the current risk of exposure at FCI Otisville appears minimal.[3] As of November 9, 2021, 1 staff member and zero inmates at FCI Otisville were reported to be currently infected with COVID-19. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus (last updated Nov. 9, 2021).[4] As FCI Otisville currently houses 549 total inmates, *FCI Otisville*, *supra*, that is a low rate of infection, *see United States v. Gineyard*, No. 19-CR-144 (VLB), 2021 WL 531969, at *4 (D. Conn. Feb. 12, 2021) ("[O]nly 1% of inmates at FCI Otisville are infected with COVID-19 tending to show a low rate of infection.").[5]

I therefore conclude that Mr. Santos has not established "extraordinary and compelling reasons" for his release.

## II.     Section 3553(a) Factors.

As I find Mr. Santos has failed to demonstrate that extraordinary and compelling reasons are present in this case, I need not turn to the § 3553(a) factors. The analysis from my February

---

[2] *See, e.g.*, *United States v. Austin*, 468 F. Supp. 3d 641, 646 (S.D.N.Y. 2020) (noting that "inside a prison facility [], because of crowded and unsanitary conditions, the virus can sometimes flourish"); *see also Achieving a Fair and Effective COVID-10 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State and Local Leaders from Public Health and Legal Experts in the United States* 4, https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf (last updated Mar. 2, 2021) (describing the heightened vulnerability to COVID-19 faced by people in confinement, including incarceration).

[3] While I do not doubt that the lockdowns at BOP facilities to curb the spread of the virus were horrible experiences for those incarcerated within, Mr. Santos does not argue—nor is there any other indication in the record—that a lockdown is still in place at FCI Otisville. *See* Def.'s Mot. 10.

[4] Since the pandemic began, 78 inmates and 49 staff at FCI Otisville have recovered after testing positive. *COVID-19 Cases*, *supra*.

[5] Mr. Santos makes the brief and unsupported allegation that BOP has been "significantly undercounting active cases." Def.'s Mot. 14. There were reports of BOP undercounting infected inmates in 2020, *see, e.g.*, Walter Pavlo, *Bureau of Prisons Underreporting COVID-19 Outbreaks in Prison*, Forbes, Apr. 1, 2020, https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison, but I cannot rely on such a report without evidence that this problem continues now, a year and a half later.

10

Order remains pertinent, however. *See* Op. & Order 9–10. In that opinion, I found that the § 3553(a) factors militated against Mr. Santos's release, particularly due to the severity of Mr. Santos's murder-for-hire offenses. *Id.* at 9 (noting the teenage victim's age and that "[d]efendant and his associates tracked their intended targets, lay in wait, and defendant himself shot and killed the two victims after preventing their escape."). I concluded, "[t]he violence of these offenses and the significant harm that they caused weigh against a reduction in defendant's sentence," because a reduction "would not adequately reflect the seriousness of defendant's offenses, deter similar criminal conduct, or protect the public." Little has changed since my prior ruling.[6]

In his second motion, Mr. Santos cites several cases where defendants were released or received sentence reductions after committing similarly serious crimes. *See* Def.'s Mot. 21, 23–25 These cases all have crucial differences from the instant case, however. In several cases, the defendant had demonstrated rehabilitation far beyond an absence of disciplinary infractions, often with a flood of letters of support. *See, e.g.*, *United States v. Ramsay*, No. 96-CR-1098 (JSR), 2021 WL 1877963, at *4, 15 (S.D.N.Y. May 11, 2021) (defendant "offers emotional support to his family and friends, excels in his employment, takes advantage of opportunities to learn new skills, and donates to charity," and "[m]any family members and friends submitted letters describing Ramsay's maturation"); *United States v. Perez*, No. 2-CR-7 (JBA), 2021 WL 837425, at *4−5 (D. Conn. Mar. 4, 2021) (defendant learned a trade and was heavily involved in mentoring fellow incarcerated individuals; the United States Attorneys wrote to the judge about the defendant's sentence being "too harsh"); *United States v. Rios*, No. 94-CR-112 (JBA), 2020 WL 7246440, at *3 (D. Conn. Dec. 8, 2020) (defendant had taken over fifty courses offered by the BOP and maintained positive

---

[6] Mr. Santos now avers that, if released, he will be deported. Def.'s Mot. 33. No evidence has been provided, however, of an active ICE detainer regarding Mr. Santos. Moreover, Mr. Santos's immigration status does not significantly change the balance of the § 3553(a) factors at this time.

11

relationships with his family, who wrote in support of his release); *United States v. Rodriguez*, 492 F. Supp.3d 306, 311, 313 (S.D.N.Y. 2020) (defendant had obtained his GED and completed an apprenticeship program, and his motion was supported by "[a]n extraordinary collection of letters— from fellow inmates, family, friends, and . . . 27 members of the prison staff").

In multiple other cited cases, the defendant had already served over half of his life behind bars. *See, e.g.*, *United States v. Cruz*, No. 94-CR-112 (JCH), 2021 WL 1326851, at *1, 13, 15 (D. Conn. Apr. 9, 2021) (nearly twenty-seven years served—thirty-one years with credit—by age forty-five); *United States v. Fisher*, 493 F. Supp. 3d 231, 232–33 (S.D.N.Y. 2020) (thirty-eight years served after sentencing at thirty-five); *United States v. Gray*, No. 95-CR-364 (CCB), 2021 WL 1856649, at *1 (D. Md. May 10, 2021) (twenty-seven years served by age fifty-one). Finally, in the remaining cited cases, the defendant had demonstrated a severely debilitating, even life-threatening illness, not only necessitating medical intervention but also making it unlikely the defendant would recidivate. *See, e.g.*, *United States v. Vasquez*, No. 8-CR-65 (RJD), 2021 WL 681174, at *2 (E.D.N.Y. Feb. 22, 2021) (advanced heart disease, partial paralysis, and Stage III chronic kidney disease); *United States v. Gluzman*, No. 96-CR-323 (LJL), 2020 WL 4233049, at *3−4 (S.D.N.Y. July 23, 2020) (repeated strokes and trouble walking due to Parkinson's Disease); *United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *1 (E.D.N.Y. July 30, 2019) (cancer and coughing blood). None of the above applies to Mr. Santos.[7]

Thus, application of the § 3553(a) factors reveals that a reduction in Mr. Santos's sentence would not be justified.

---

[7] Mr. Santos also cites several cases reducing sentences under Section 404 of the First Step Act. Def.'s Mot. 24–25. Since these cases involve sentence recalculations, *i.e.*, those reductions were triggered by a prior injustice (disparate sentencing) rather than changed conditions (*e.g.*, a pandemic), they are not relevant here.

12

## CONCLUSION

For the foregoing reasons, Mr. Santos's motion for compassionate release is denied.

SO ORDERED.

Dated: November 9, 2021
       Brooklyn, NY

                                                             /s/
                                         Allyne R. Ross
                                         United States District Judge