UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA,                                     :    01-CR-537 (ARR)
                                                              :
                                                              :
     -against-                                                :    NOT FOR ELECTRONIC
                                                              :    OR PRINT PUBLICATION
MANUEL SANTOS,                                                :
                                                              :    OPINION & ORDER
                    Defendant.                                :
                                                              :
------------------------------------------------------------- X
```

ROSS, United States District Judge:

Defendant Manuel Santos has filed a renewed motion for sentence reduction, also known as a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), and a motion to appoint counsel, pursuant to 18 U.S.C. § 3006A(g). The motion for sentence reduction is Mr. Santos's fourth in the last two years. *See* ECF Nos. 176, 182, 186 (prior motions). Because the government has briefed its opposition to a reduction in Mr. Santos's sentence twice, *see* ECF Nos. 178, 184, I declined to make the government's response to this motion compulsory. *See* August 16, 2022 Order. The government did not file a response to the instant motion. Accordingly, I consider the motion to be fully briefed. For the reasons set forth below, Mr. Santos's motion to appoint counsel and motion for sentence reduction are denied.

## BACKGROUND

Mr. Santos filed a motion to reduce his sentence on January 12, 2021. Def.'s First Mot. for Sentence Reduction, ECF No. 176. I denied that motion on February 8, 2021. First Op. & Order at 5–10, ECF No. 179. On September 17, 2021, Mr. Santos again filed a motion for compassionate release. Def.'s Second Mot. for Sentence Reduction, ECF No. 182. I denied that motion on

November 9, 2021. Second Op. & Order at 5–12, ECF No. 185. On February 3, 2022, Mr. Santos filed a supplement to his September 2021 motion, arguing that he should be released due to a surge in COVID-19 cases at FCI Otisville, where he is imprisoned. Suppl. Mot. for Compassionate Release 1, ECF No. 186. On February 8, 2022, I denied that supplemental motion. *See* Feb. 8, 2022 Order.

Mr. Santos's history is detailed further in my orders of February 8, 2021 and November 9, 2021. In short, Mr. Santos was hired to murder two men as part of a drug sale dispute. Mr. Santos and others surveilled their intended victims' purported residence, and when two individuals emerged, Mr. Santos shot and killed both victims, one of whom was a fourteen-year-old boy. The two victims were not the men Mr. Santos had been hired to kill. First Op. & Order at 1–2. Mr. Santos was convicted of two counts of intentional killing under 21 U.S.C. § 848(e)(1)(A) and one count of use of a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A)(iii). *See* Judgment, ECF No. 67. He was sentenced to concurrent terms of life imprisonment for murder and a consecutive term of 10 years imprisonment for the violation of § 924(c). *Id.* Mr. Santos is now in his twenty-second year of incarceration. *See* Def.'s Renewed Mot. for Compassionate Release ("Renewed Mot.") 9, ECF No. 187.

On August 9, 2022, Mr. Santos filed the instant motion to reduce his sentence. Mr. Santos argues for his release based on: (1) the fact that his time served now approximates the federal sentencing average for homicide; (2) aggregate factors including his health, rehabilitative status, the fact that he will be deported, and the health risks presented by COVID-19; (3) the Supreme Court's ruling in *Concepcion v. United States*, 142 S. Ct. 2389 (2022) that courts may consider intervening changes of law or fact in adjudicating motions for sentence reduction; and (4) "the ineligibility [*sic*] of a potential Life sentence for murder in relation to an offense pursuant to 21

2

U.S.C.S. § 841(b) under the FSA." Renewed Mot. 1. On August 29, 2022, Mr. Santos filed a motion to appoint counsel to assist him with the motion for sentence reduction. Mot. to Appoint Counsel, ECF No. 188.

## MOTION TO APPOINT COUNSEL

Defendant Manuel Santos's motion for appointment of counsel is denied. Mr. Santos has no constitutional or statutory right to appointed counsel in connection with his motion for compassionate release. *See United States v. Fleming*, 5 F.4th 189, 192–93 (2d Cir. 2021) ("[A] defendant has no right to the assistance of counsel in filing a motion for compassionate release or appealing from the denial of such a motion . . . ."); *see also United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) ("[E]very federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings."). Nor would appointment of counsel be helpful, since Defendant's renewed motion repeats a number of arguments I have already ruled do not entitle him to a reduced sentence and, as set forth below, I deny Mr. Santos's renewed motion. *See* ECF Nos. 179, 185; *see also Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) (noting that "counsel is often unwarranted where the [movant's] chances of success are extremely slim" (citation omitted)).

## MOTION FOR COMPASSIONATE RELEASE

### I.   Legal Standard

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and

3

compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting a defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (citation and quotation marks omitted).

In determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t) (emphasis added)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) does not bind a district court, *id.* at 237 n.5, but it does provide some guidance, *United States v. Dekattu*, No. 18-CR-474 (ARR), 2020 WL 7711842, at *1 (E.D.N.Y. Dec. 29, 2020). Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios: first, where "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."); second, where a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or

4

"experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id.* cmt. 1(A)(ii). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
　(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
　(B) to afford adequate deterrence to criminal conduct;
　(C) to protect the public from further crimes of the defendant; and
　(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
(5) any pertinent [Sentencing Commission] policy statement . . . .
(6) the need to avoid unwarranted sentence disparities among [d]efendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *United States v. Hatcher*, No. 18-CR-454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting U.S.S.G. § 1B1.13(2)). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

Mr. Santos submitted his request to the warden of FCI Otisville on July 6, 2022. Renewed

Mot. Ex. A. On July 14, 2022, the warden responded that Santos "[is] not eligible for CARES Act release due to your conviction for violence" and referred Mr. Santos to his unit team. *Id.* Although Mr. Santos sent additional emails regarding his request for release, *see id.*, there is no suggestion in the record that any other employee of FCI Otisville responded substantively. *Id.* Accordingly, I find that Mr. Santos has exhausted his administrative remedies, and I need only address whether Mr. Santos has stated extraordinary and compelling reasons for release, and whether those reasons are outweighed by the § 3553(a) factors.

## II. Mr. Santos Has Not Demonstrated That Extraordinary and Compelling Reasons Weigh in Favor of His Release

I have previously addressed Mr. Santos's arguments that his diabetes and obesity make him particularly vulnerable to COVID-19. Without additional comorbidities or evidence that Mr. Santos is currently experiencing severe health issues due to these conditions, his health conditions and the COVID-19 pandemic, standing alone, do not amount to extraordinary and compelling reasons for release. *See* Second Op. & Order 5–9. Little has changed since I made this determination and, although the Omicron variant spreads more easily and can cause reinfection among vaccinated individuals, it is considered less severe in causing illness and death. *See Variants of the Virus*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/variants/index.html (last visited Sept. 19, 2022). Further, although carceral settings carry an inherent risk of rapid infection spread, the current risk of exposure at FCI Otisville appears minimal. Second Op. & Order at 9–10 & n.2. As of September 19, 2022, six staff members and zero inmates at FCI Otisville were reported to be currently infected with COVID-19. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last updated Sept. 19, 2022). FCI Otisville currently houses 410 inmates, suggesting a low rate of infection.

Mr. Santos argues that under recent Supreme Court precedent, I should consider

6

intervening changes in law and fact in my analysis of "extraordinary and compelling circumstances." In *Concepcion v. United States*, the Court held that district courts adjudicating motions for sentence reduction under Section 404(b) of the First Step Act "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) . . . ." 142 S. Ct. at 2396. Reconsideration is limited where "Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence." *Id.* Although *Concepcion* considered resentencing under Section 404(b) of the First Step Act, *Concepcion*'s framework applies to Mr. Santos's motion for sentence reduction under § 3582(c). *See United States v. Amato*, __ F.4th __, 2022 WL 4126159, at *1 n.1 (2d Cir. Aug. 31, 2022) (per curiam) (noting that *Concepcion* "broadly[] discussed the scope of district courts' discretion in resentencing"); *see also id.* at *4 n.5 (noting that the court's discretion to consider actual innocence in § 3582 motion was limited by statute and therefore outside the "longstanding tradition of discretion" discussed in *Concepcion*). I conclude that there have been no changes in law or fact that justify a reduction in Mr. Santos's sentence.

      Mr. Santos avers that "the [First Step Act] has amended the potential range of possible sentencing outcomes which the petitioner might have been eligible to receive" for "his involvement in two (2) murders committed in relation to a drug trafficking offense punishable pursuant to 21 U.S.C.S. § 841(b)," such that "petitioner would no longer be eligible to have received a term of Life imprisonment." Renewed Mot. 13. Although the First Step Act amended § 841(b), it did not alter the mandatory minimum or potential maximum sentence for either statute under which Mr. Santos was convicted. *See* 21 U.S.C. § 848(e); 18 U.S.C. § 924(c)(1)(A)(iii). The sentencing range for § 848(e) been the same since Mr. Santos was sentenced, *see* 21 U.S.C. § 848(e) (2006), and the latest version of the U.S. Sentencing Guidelines Manual recommends that

7

"life imprisonment is the appropriate sentence" for premeditated killing such as that committed by Mr. Santos. U.S.S.G. § 2A.1.1, cmt. 2(A) (2021). Similarly, the mandatory minimum under § 924(c)(1)(A)(iii) remains ten years—which is what Mr. Santos received.

Mr. Santos also asks the court to consider whether the holdings in *Alleyne v. United States*, 570 U.S. 99 (2013), and *United States v. Davis*, 139 S. Ct. 2319 (2019), "lend themselves to the scope of extraordinary and compelling reasons." Renewed Mot. 11. In *Alleyne*, the Court held that facts that increase a mandatory minimum sentence—in that case, the factual question of whether the firearm was merely "used or carried" or "brandished" under § 924(c)(1)(A)(ii)—are elements of that crime and therefore must be submitted to the jury and found beyond a reasonable doubt. 570 U.S. at 103–04. In *Davis*, the Court ruled that the so-called "residual clause" of § 924(c) was unconstitutionally vague. 139 S. Ct. at 2323–24. That clause had made it a crime to use a firearm in connection with felonies "that by [their] nature, involv[e] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

Neither *Alleyne* nor *Davis* bears on the "extraordinary and compelling reasons" I would need to find in order to reduce Mr. Santos's sentence. First, under *Alleyne*, Mr. Santos does not identify a question he believes the jury failed to find by a preponderance of the evidence. Although *Alleyne* specifically held that the jury should have determined whether the defendant "brandished" a firearm under 18 U.S.C. § 924(c)(1)(A)(ii), there is no doubt in Mr. Santos's case that the jury would have found that he "discharged" a firearm under § 924(c)(1)(A)(iii), as the jury found him guilty of intentional killing for the same conduct. Accordingly, I decline to find the legal standard announced in *Alleyne* an "extraordinary and compelling reason" to reduce Mr. Santos's sentence.

Although *Davis* invalidated 924(c)'s "residual clause," it left intact the statute's "elements

clause," which defines a "crime of violence" as "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *Davis*, 139 S. Ct. at 2325 (noting that defendants had also been convicted under the elements clause for use of a firearm in the course of a robbery). Mr. Santos was convicted of a crime—murder—that "has as an element the use . . . of physical force against the person . . . of another." *Compare* 18 U.S.C. § 924(c)(3)(A) *with* 21 U.S.C. § 848(e)(1)(A) (applying to "any person . . . who intentionally kills . . . an individual"). The Supreme Court's holding in *Davis* does not present an "extraordinary and compelling reason" to reduce Mr. Santos's sentence.

### III.   Section 3553(a) Factors

Because I find Mr. Santos has failed to demonstrate extraordinary and compelling reasons are present in this case, I need not turn to the § 3553(a) factors. The analysis from my prior opinions remains pertinent. In my February 8, 2021 opinion, I found that the § 3553(a) factors militated against Mr. Santos's release, in particular because of the severity of Mr. Santos's murder-for-hire offenses, the teenage victim's age, and the fact that "[d]efendant and his associates tracked their intended targets, lay in wait, and defendant himself shot and killed the two victims after preventing their escape." First Op. & Order 9–10. I again conclude that the violence of these offenses and the significant harm that they caused weigh against a reduction in Mr. Santos's sentence and that a reduction will not "adequately reflect the seriousness of defendant's offenses, deter similar criminal conduct, or protect the public." *Id.* at 10; *see* 18 U.S.C. § 3553(a)(2).

In his renewed motion, Mr. Santos provides evidence that he will be released to the custody of Immigration and Customs Enforcement for deportation upon his release. Renewed Mot. at 12; *id.* at 25 (detainer action letter). Courts in this Circuit have noted that deportation is "a form of

9

punishment itself" and considered deportation a factor relating to "the history and characteristics of the defendant" under 18 U.S.C. §3553(a)(1). *See United States v. Rodriguez*, No. 05-CR-960 (JPO), 2022 U.S. Dist. LEXIS 8717, *17 (S.D.N.Y. Jan. 18, 2022) (citing *United States v. Chin Chong*, No. 13 Crim. 570, 2014 U.S. Dist. LEXIS 135664, 2014 WL 4773978, at *6 (E.D.N.Y. Sept. 24, 2014)). Mr. Santos avers that he would be unable to reunite with his ex-wife and children once deported. Renewed Mot. Ex. A. Although I agree that Mr. Santos's deportation and its consequences for his ability to see his family weighs slightly in favor of his release, this factor does not outweigh the others.

Mr. Santos also argues that he "has served a sentence that either exceeds or is equivalent to that which he would have been sentenced to today." Renewed Mot. at 12. The average length of a murder sentence for which the primary Guideline is § 2A1.1 is 297 months, or just under 25 years. *See Interactive Data Analyzer*, U.S. Sentencing Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard (fiscal years 2015-2021, crime type "murder," primary guideline § 2A1.1) (last visited Sept. 19, 2022). This figure increases to 325 months, or about 27 years, when filtered for those individuals with criminal history IV, which was Mr. Santos's criminal history level when he was sentenced. *See id.*; Gov't's Sentencing Mem., ECF No. 65. These figures do not show, however, what proportion of the defendants received a lesser sentence after pleading guilty or providing material assistance to the government. Although § 3553(a)(6) directs courts to "avoid unwarranted sentence disparities among [d]efendants with similar records who have been found guilty of similar conduct," the fact that the average sentence is lower than the sentence Mr. Santos received does not change the balance of § 3553(a) factors. The Sentencing Guidelines recommend a sentence of life imprisonment for "premeditated killing." As I have noted, Mr. Santos's crime was especially severe, and a life sentence reflects the

seriousness of his offense, regardless of the average sentence for a "similar" crime.

Mr. Santos also asks me to review the sentence reductions granted by several courts. Each presents different factual circumstances from Mr. Santos's. First, in *United States v. Rodriguez*, the defendant suffered from diabetes, obesity, and hyperlipidemia due to high cholesterol. 2022 U.S. Dist. LEXIS 8717, at *10–11. The defendant was evidently a stellar inmate, "tak[ing] advantage of every programming opportunity available to him while incarcerated," with only a single disciplinary infraction in his fifteen-year term of incarceration. *Id.* at *12. Rodriguez also provided glowing letters from fellow inmates. *Id.* at *13–14. Further, the Bureau of Prisons' risk assessment rated Mr. Rodriguez a "minimum" level of risk. *Id.* at *18. *Cf.* Gov't's Opp'n to Second Mot. Sentence Reduction Ex. A, ECF No. 184-1 (reflecting a "medium" level of risk for Mr. Santos). Second, in *United States v. Reyes*, the defendant's sentence was reduced because he was subjected to a sentencing enhancement that would no longer apply today, the government did not oppose his motion for compassionate release and agreed that he had rehabilitated, and changes in law had cut the defendant's mandatory minimum sentence in half. No. 3:11-CR1 (JBA), 2021 U.S. Dist. LEXIS 99864, at *5–11 (D. Conn. May 26, 2021). As I have discussed, no such changes in law apply to Mr. Santos, and the government has opposed his last two motions for sentence reduction. Third, in *United States v. Ramirez*, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021), the court found that the defendant's diabetes, hypertension, and obesity did not present extraordinary and compelling circumstances. However, the court found extraordinary and compelling circumstances because the defendant was subjected to a 48-year mandatory minimum sentence after committing his crimes at 19 years of age, had rehabilitated, and had suffered a "dreadful upbringing," reducing his sentence by 8 years, to 40 years total. *Id.* at 48–52. Finally, in *United States v. Ramirez*, No. 98 Cr. 438 (PGG), 2021 U.S. Dist. LEXIS 173414 (S.D.N.Y. Sept. 13, 2021), the defendant suffered

11

from advanced pancreatic and liver cancer, a terminal diagnosis, which the court found an extraordinary and compelling reason to grant release. *Id.* at *16–17.

Although Mr. Santos points to his "exemplary rehabilitation," his record free of discipline for the last 8 years, and the completion of his GED, all of which I commend, I cannot agree on the facts in front of me that Mr. Santos's health risks and rehabilitative efforts outweigh the severity of his crimes. Thus, the application of the § 3553(a) factors would not justify a reduction in Mr. Santos's sentence.

## CONCLUSION

For the foregoing reasons, Mr. Santos's motion to appoint counsel and motion for compassionate release are denied.

SO ORDERED.

Dated: September 19, 2022
      Brooklyn, NY

                                              /s/
                                        Allyne R. Ross
                                        United States District Judge